DUKAJ v DEPARTMENT OF SOCIAL SERVICES

Docket No. 83897. Submitted April 8, 1986, at Detroit. Decided June
        16, 1986. Leave to appeal applied for.

    Petitioner, Mark Dukaj, was a recipient of aid to families with
        dependent children when his benefits were terminated by the
        Department of Social Services because of his receipt of a lump
        sum workers' compensation settlement in May of 1982. Dss
        determined that he would be ineligible for AFDC benefits until
        June, 1984. The proceeds from petitioner's settlement were
        almost immediately paid over to two creditors to pay loans
        made while petitioner was employed. Petitioner applied for
        benefits, but his application was denied and he took no appeal
        from that decision. In July, 1982, petitioner left the family
        home, and his wife applied for benefits. Her application was
        denied, but she received approval for medicare and food stamp
        benefits. A hearing referee upheld the DSS's denial of the
        application, and no appeal was taken to the circuit court. In
        April, 1983, DSS adopted a policy to allow an exception to the
        lump sum rule for a life-threatening circumstance which was
        defined as one which poses a danger to the health and safety of
        the group or of a group member. In May, 1983, petitioner
        moved back into the family home and reapplied for benefits,
        seeking a recalculation of the period of his ineligibility in light
        of his loss of the workers' compensation award. His application
        was denied, the hearing referee determining that the press for
        repayment of the loans did not constitute a life-threatening
        circumstance and that, even if it did, its coming before the
        policy change disqualified it. Petitioner appealed to the Wayne
        Circuit Court, which affirmed, Maureen Pulte Reilly, J., con-
        cluding that recalculation of the ineligibility period could occur

REFERENCES

Am Jur 2d, Welfare Laws §§ 6 et seq.

Who is "dependent child" within meaning of §§ 406(a), 407(a), and
    408(a) of the Social Security Act (42 USCS §§ 606(a), 607(a), and
    608(a)), entitling families to aid for dependent children (AFDC).
    23 ALR Fed 232.

Income tax refund as income or resource to be considered in
    determining eligibility for benefits under aid to families with
    dependent children program. 3 ALR4th 1074.

if (1) a life-threatening circumstance exists, and (2) the lump sum was used to take care of the life-threatening situation and that only the latter had occurred. Petitioner appealed. *Held:*

1. The life-threatening circumstance need not occur on or after the effective date of the policy. It need only occur during the period of ineligibility.

2. The ruling of the Court of Appeals operates prospectively only.

Reversed.

SOCIAL SERVICES — AID TO FAMILIES WITH DEPENDENT CHILDREN — LUMP SUM RULE — LIFE-THREATENING CIRCUMSTANCE.

As of June 16, 1986, the life-threatening circumstance exception which may shorten a period of ineligibility for benefits for aid to families with dependent children occasioned by the application of the lump sum rule applies wherever the life-threatening circumstance existed at some time during the period of ineligibility and the other requirements are met (45 CFR 233.20[a][3][ii][D]).

*Michigan Legal Services* (by *Marilyn Mullane*), and *Wayne County Neighborhood Legal Services, Inc* (by *Mosabi Hamed*), for Mark Dukaj.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Constance J. Hobson,* Assistant Attorney General, for the Department of Social Services.

Before: DANHOF, C.J., and HOOD and SULLIVAN, JJ.

DANHOF, C.J. Mark Dukaj appeals as of right from the March 6, 1985, order of the circuit court which affirmed the decision of the hearing referee for the Michigan Department of Social Services denying petitioner's request for AFDC benefits pursuant to the application of the "lump sum rule," 42 USC 602(a)(17).

In May, 1982, the AFDC benefits for petitioner and his family were terminated when petitioner received a workers' compensation award of approx-

imately $12,000. By applying the lump sum rule to the award, DSS determined that petitioner would be ineligible for benefits until June, 1984.

The proceeds from petitioner's workers' compensation settlement were almost immediately paid over to two creditors. The creditors forced petitioner to accompany them to the bank where bank checks were made payable to them. The creditors had loaned petitioner money at various times between 1975 and 1979 for the purchase of furniture and to cover other expenses while petitioner was employed.

Petitioner reapplied for AFDC benefits, but his application was denied and he took no appeal from that decision.

In July, 1982, petitioner left the family home, and his wife reapplied for AFDC benefits. Her application was denied, but she received approval for medicare and food stamp benefits. A hearing referee upheld the DSS's denial of the application, and no appeal was taken to the circuit court.

In April, 1983, DSS adopted a policy which constitutes the center of controversy in this appeal.

In May, 1983, petitioner moved back into the family home, and reapplied for AFDC benefits. His application was denied. His appeal from that decision forms the basis of our review.

Under the lump sum rule, 42 USC 602(a)(17), a lump sum received by an AFDC recipient is considered as income to the recipient for a period calculated by dividing the lump sum by the state's monthly need standard. *Zarko v Director, Dep't of Social Services,* 144 Mich App 576, 579; 375 NW2d 765 (1985). The rule was enacted by Congress as part of the Omnibus Budget Reconciliation Act of 1981. See, *Collingsworth v Director, Dep't of Social Services,* 146 Mich App 186, 191; 379 NW2d 417 (1985). This was an effort to cause the family to

budget the lump sum income for family needs during the entire period of ineligibility. *Collingsworth, supra,* p 192. The purpose of the lump sum rule is to discourage the family from spending the lump sum income as quickly as possible in order to retain AFDC eligibility. *Collingsworth, supra.*

After the lump sum rule was enacted, the Department of Health & Human Services (HHS) promulgated regulations to implement the lump sum rule. In response to comments received to the published interim regulations, the final implementing regulations authorized an exception for life-threatening circumstances in 45 CFR 233.20(a)(3)(ii)(D) (1982), which provides in pertinent part:

> A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

DSS adopted a policy to allow an exception to the lump sum rule for a life-threatening circumstances as follows:

> The ineligibility period may be shortened only if a life-threatening circumstance exists and the income causing the ineligibility period has been or will be expended in connection with the life-threatening circumstance. Until that time, the income must have been used to meet the group's needs on assistance standards and currently the group must have no other income or resources sufficient to meet the life-threatening circumstance.

This policy exception to the lump sum rule was to take effect April 1, 1983. Assistance Payments Manual, Item 330, pp 2-3.

The policy defined a life-threatening circumstance this way:

> one which poses a danger to the health and safety of the group or of a group member. Examples are: medical needs not covered by medical insurance, or loss of food and shelter because of fire, flood, or similar catastrophes.

When petitioner filed his application for AFDC benefits in May of 1983, he sought a recalculation of the period of ineligibility (i.e., May of 1983 until June of 1984) in light of his loss of the workers' compensation award. In the administrative hearing, petitioner sought to persuade the hearing referee that his loss of the award was a life-threatening circumstance to which the exception applied. In his conclusions of law, the hearing referee found that the press of petitioner's creditors did not constitute a life-threatening circumstance as defined by the policy. In his view, a life-threatening circumstance had not occurred from the effective date of the policy. He concluded that "the circumstances of repayment of the loans in 1982 are not covered by the April, 1983 change in policy if they could be characterized as coming within the policy exceptions."

The circuit court's review of the life-threatening circumstance exception focused upon the verb tense employed in the language of the policy. According to the circuit court, a recalculation of the ineligibility period could occur if (1) a life-threatening circumstance *exists,* and (2) the lump sum was used to take care of the life-threatening situation. The circuit court found that the second prong of the test was satisfied but not the first

prong. Thus, the circuit court concluded that the policy exception would not be available to a family who had sustained a life-threatening circumstance which occurred before the effective date of the policy, i.e., April 1, 1983, during a period of ineligibility. The circuit court affirmed the conclusion of the hearing referee.

We are asked to construe the DSS's policy allowing an exception for a life-threatening circumstance. The narrow question of law presented for our decision is whether a life-threatening circumstance must have occurred contemporaneously with or after the effective date of the DSS policy in order for the policy exception to apply.

We agree with petitioner that the exception may apply to a case such as this in which the life-threatening circumstance occurred before the effective date of the policy. However, we choose to give our decision prospective application so that petitioner does not receive the benefit of the exception which we believe would result in a windfall to him if the length of his ineligibility period was recalculated for the time span between May, 1983 (the date of his application for AFDC benefits) and July, 1984 (the end of petitioner's ineligibility period).

We believe that DSS has misinterpreted the policy exception by incorporating a requirement that the life-threatening circumstance occur contemporaneously with the effective date of the policy. Such a requirement is not found in the express language of the policy. We note that the policy language is identical to the language of the regulation adopted by the Department of Health and Human Services, 45 CFR 233.20(a)(3)(ii)(D) (1982). We further note that the purpose for the exception is to provide some flexibility in the application of

the lump sum rule. Thus, the policy is remedial in nature.

Although the policy language is silent as to the timing of a life-threatening circumstance, we believe that a more logical construction of the policy merely requires that the life-threatening circumstance occur during the period of ineligibility. Our construction is supported by the origins and the purpose of the policy exception. We decline to place an emphasis upon the verb tense of "exists," unlike the circuit court and the hearing referee.

We find petitioner's reliance upon *Collingsworth v Director, Dep't of Social Services, supra,* and *Brancheau v Director, Dep't of Social Services,* 141 Mich App 527; 367 NW2d 357 (1985), misplaced. In neither case did this Court require the application of the life-threatening circumstance exception. Instead, this Court remanded the cases for consideration of whether the exception applied since the exception had not been considered initially and, in *Collingsworth, supra,* the record was undeveloped. In neither case was the specific issue which is raised here argued or considered.

Since we have decided to give our decision prospective application, we are not required to remand this case for a factual determination of whether a life-threatening circumstance existed during the period of petitioner's ineligibility.

Reversed. No costs, a public question being involved.